**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: December 27, 2016.**

_____
**H. CHRISTOPHER MOTT**
**UNITED STATES BANKRUPTCY JUDGE**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **H&J ALAMO AUTO GLASS, INC.,** | ) | **Case No. 15-31917-HCM** |
| **d/b/a ALAMO AUTO GLASS,** | ) | **Chapter 11** |
| | ) | |
| Debtor. | ) | |

### ORDER CONFIRMING H&J ALAMO AUTO GLASS, INC. *d/b/a* ALAMO AUTO GLASS ("AAG")'s MODIFIED FIRST AMENDED PLAN OF REORGANIZATION DATED DECEMBER 1, 2016

On November 10, 2016 this Court considered for confirmation the Debtor's *Amended First Amended Plan of Reorganization* dated December 1, 2016 (the "*Plan*") proposed by H&J ALAMO AUTO GLASS, INC. *d/b/a* ALAMO AUTO GLASS ("AAG"), the Debtor and Debtor-in-possession in this Chapter 11 proceeding. The Debtor appeared by and through its attorneys of record MIRANDA & MALDONADO, P.C. Kevin M. Epstein, Esq., appeared on behalf of the Office of the United States Trustee ("UST"). Mr. Javier Hernandez appeared by and through his attorneys of record, Corey Haugland, Esq., and Brett Duke, Esq. After finding that the *Plan* was duly transmitted to creditors and parties-in-interest of record as required by the applicable Federal and Local Rules of Bankruptcy Procedure, this Court finds and orders as follows:

1.      The Debtor filed its *Modified First Amended Plan of Reorganization* dated December 1, 2016 on December 6, 2016 (the "*Plan*"). A true and correct copy of the *Plan* is attached as **Exhibit "A"**.

2.      The *Plan* has been accepted in writing by at least one impaired Class of Creditors whose acceptance is required by law.

3.      All applicable provisions of the Bankruptcy Code, including Chapter 11 of the Code, have been complied with, and the *Plan* has been proposed by the *Debtor* in good faith and not by any means forbidden by law.

4.      Except as otherwise provided by this Order, each holder of a claim or interest will receive or retain under the *Plan* property of a value, as of the *Effective Date* of the *Plan*, which is not less than the amount that such holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code on such date.

5.      All payments made or promised by the Debtor or by any other person for services or for costs and expenses in, or in connection with the *Plan* and incident to the case, have been fully disclosed to the Court and are reasonable or, if to be fixed after confirmation of the *Plan*, will be subject to the approval of the Court.

6.      The identity, qualifications, and affiliations of the persons who will be employed or retained by the *Reorganized Debtor*, after confirmation of the *Plan*, have been fully disclosed, and the appointment of such persons, or their continuance therein, is equitable and consistent with the interest of the creditors and equity security holders and with public policy.

7.      The identity of any Insider as that term is defined by the Bankruptcy Code that will be employed or retained by the *Reorganized Debtor* under the *Plan*, and their compensation or lack thereof has been fully disclosed.

8.      Confirmation of the *Plan* is not likely to be followed by the liquidation, or the need for further financial reorganization of the *Reorganized Debtor*.

9.      All Classes of Claims and Interests have accepted the *Plan*, determined without including any acceptance of the *Plan* by any Insider holding a claim in such Class.

IT IS THEREFORE ORDERED, ADJUDICATED AND DECREED that the *Modified First Amended Plan of Reorganization* filed of record in this matter on December 6, 2016 is hereby CONFIRMED.

IT IS THEREFORE ORDERED, ADJUDICATED AND DECREED that the Debtor's *First Amended Disclosure Statement,* previously conditionally approved is hereby finally APPROVED.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that pursuant to Public Law 104-99, the Debtor shall continue to pay Quarterly Fees on a timely basis until both cases are closed by the Court and shall timely file any required *Post-Confirmation Reports*.

###

**APPROVED AS TO FORM:**

/s/ Carlos A. Miranda III, Esq.
Carlos A. Miranda III, Esq.
Gabe Perez, Esq.
MIRANDA & MALDONADO, P.C.
5915 Silver Springs, Bldg. 7
El Paso, Texas 79912
(915) 587-5000 (Telephone)
(915) 587-5001 (Facsimile)
cmiranda@eptxlawyers.com
gperez@eptxlawyers.com

Attorneys for the Debtor.

/s/ Steven Bass, Esq.
Steven Bass, Esq.
U.S. ATTORNEY'S OFFICE
601 NW Loop 410, Suite 600
San Antonio, Texas 78216.
(210) 384-7100 (Telephone)
(210) 384-7105 (Facsimile)
Steven.Bass@usdoj.gov

Assistant United States Attorney

/s/ Kevin M. Epstein, Esq.
Kevin M. Epstein, Esq.
U.S. DEPARTMENT OF JUSTICE
OFFICE OF THE U.S. TRUSTEE
615 E. Houston St., Room 533
San Antonio, TX  78205
(210) 472-4640 (Telephone)
(210) 472-4649 (Facsimile)
kevin.m.epstein@usdoj.gov

Attorney for the Office of the
United States Trustee

/s/ Corey W. Haugland, Esq.
Corey W. Haugland, Esq.
JAMES & HAUGLAND, P.C.
609 Montana Avenue
El Paso, Texas 79902
(915) 532-3911 (Telephone)
(915) 541-6440 (Facsimile)
chaugland@jghpc.com

Counsel for Javier Hernandez

/s/ Courtney J. Hull, Esq.
Courtney J. Hull, Esq.
Assistant Attorney General
Bankruptcy and Collections Division
Texas Attorney General's Office
300 W. 15th Street
Austin, Texas 78701
(512) 475-4862 (Telephone)
(512) 936-1409 (Facsimile)
courtney.hull@texasattorneygeneral.gov

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **H&J ALAMO AUTO GLASS, INC.,** | ) | **Case No. 15-31917-HCM** |
| **d/b/a ALAMO AUTO GLASS,** | ) | **Chapter 11** |
| | ) | |
| **Debtor.** | ) | |

**<u>DEBTOR'S MODIFIED FIRST AMENDED PLAN OF REORGANIZATION</u>**

<u>Proposed By:</u>

H&J ALAMO AUTO GLASS, INC.
Dated: December 1, 2016

<u>Submitted by:</u>

Carlos A. Miranda III, Esq.
Gabe Perez, Esq.
MIRANDA & MALDONADO, P.C.
5915 Silver Springs, Bldg. 7
El Paso, Texas 79912
(915) 587-5000 (Telephone)
(915) 587-5001 (Facsimile)
**<u>cmiranda@mirandafirm.com</u>**
**<u>gperez@mirandafirm.com</u>**

Attorneys for H&J Alamo Auto Glass, Inc.
d/b/a Alamo Auto Glass

# Table of Contents

**SECTION 1- INTRODUCTION** ...................................................................................5

| | | |
|---|---|---|
| 1. | Preliminary Statement: | 5 |
| 2. | Approval of the Disclosure Statement by the Court: | 5 |
| 3. | Holders of Claims: | 5 |
| 4. | Vote: | 5 |
| 5. | Late Ballots: | 6 |
| 6. | Contents of the Disclosure Statement and Plan: | 6 |
| 7. | Facts Are as of the Petition Date or Disclosure Statement Date: | 6 |
| 8. | Forward-Looking Statements: | 6 |
| 9. | Hearings on Objections to Disclosure Statement and Confirmation of the Plan: | 6 |

**SECTION 2 – CHAPTER 11** ...........................................................................................7

| | | |
|---|---|---|
| 1. | The Purpose of Chapter 11: Business Reorganization and Formulation of a Plan: | 7 |
| 2. | Chapter 11: | 7 |
| 3. | Plan of Reorganization: | 7 |
| 4. | Definition of Impairment: | 8 |
| 5. | Confirmation Hearing: | 8 |
| 6. | Who May Object to Confirmation of the Plan: | 9 |
| 7. | Who May Vote to Accept/Reject the Plan: | 10 |
| 8. | What is an Allowed Claim/Interest: | 10 |
| 9. | Bar Date: | 10 |
| 10. | What is an Impaired Claim/Interest: | 10 |
| 11. | Who is Not Entitled to Vote: | 10 |
| 12. | Who Can Vote in More Than One Class: | 11 |
| 13. | Votes Necessary to Confirm the Plan: | 11 |
| 14. | Votes Necessary for a Class to Accept the Plan: | 11 |
| 15. | Treatment of Non-Accepting Classes: | 11 |
| 16. | Cramdown: | 11 |
| 17. | With Respect to a Secured Claim, "Fair and Equitable" Means Either: | 11 |
| 18. | With respect to an Unsecured Claim "Fair and Equitable" Means Either: | 12 |
| 19. | Effect of Confirmation: | 12 |

**SECTION 3 - BASIS OF THE PLAN** ..........................................................................12

| | | |
|---|---|---|
| 1. | Basis Of the Plan: | 12 |

2.   Future Income and Expenses Under the Plan:                                          12

3.   Future Management of the Debtor and Compensation to Executive and Managerial
Employees:                                                                                        13

   a.   Operations in Chapter 11:..........................................................................13

        **SECTION 4 – UNCLASSIFIED CLAIMS....................................................14**

1.   Administrative Expenses                                                              14

2.   Priority Tax Claims                                                                  14

3.   Chapter 11 Quarterly Fees:                                                           16

   SECTION 5 – CLASSIFICATION OF CLAIMS AND INTERESTS OF CREDITORS ... 16

1.   Secured Claims                                                                       16

3.   General Unsecured Claims – Class 5:                                                  22

6.   Equity Interest Holders Class 6:                                                     23

7.   Class 7 - Claim of Javier Hernandez:                                                 24

   SECTION 6 – REQUIREMENT FOR CONFIRMATION OF PLAN ................................ 25

        **1. ...........................................................Confirmation Requirements and Procedures:
        ...................................................................................................................25**

        **SECTION 7 - MECHANICS AND IMPLEMENTATION OF THE PLAN.............26**

1.   Means For Execution of the Plan:                                                     26

        **SECTION 8 - FEASIBILITY OF THE PLAN.............................................................26**

1.   Feasibility - No Further Reorganization Proceedings:                                 26

        **SECTION 9 – GENERAL TERMS AND CONDITIONS ..........................................26**

1.   General Terms and Conditions:                                                        26

a.   Future Tax Obligations:                                                              26

   b.   Replacement Liens: ................................................................................ 26

c.   Transfers of Property:                                                               27

d.   Default:                                                                             27

e.   Revestment of Title:                                                                 27

f.   Discharge:                                                                           27

Upon confirmation of Plan, the reorganized Debtor shall receive a discharge as provided for
under 11 U.S.C §1141 (d)(1).                                                               27

g.   Preservation of Bankruptcy Causes of Action:                                        27

h.   No Additional Charges:                                                              28

i.   De Minimus Distributions:                                                           28

j.   Closing the Case:                                                                   28

k.   Non-Waiver:                                                                         28

l.      Law Governing Construction:                                                                          29

     **SECTION 10 - DEFAULT BY THE DEBTOR OF ANY UNSECURED CLAIM ... 29**

     **1. ............................. Default In Payment of Claims of Unsecured Creditors by AAG: ................................................................................................................................ 29**

   a.      Conditions of Default and Remedies: ....................................................................... 29

   b.      Defenses: ................................................................................................................ 29

  **SECTION 11 - TERMS AND CONDITIONS APPLICABLE TO SECURED CREDITORS ................................................................................................................................ 29**

1.      Terms and Conditions Relating to Secured Creditors:                                    29

2.      Preserved Liens:                                                                                               29

3.      Release of Liens:                                                                                                30

4.      Determination Of Secured Status:                                                                     30

     **SECTION 12 - SATISFACTION OF CLAIMS AND INTERESTS ........................... 30**

1.      Satisfaction of Claims and Interests:                                                                 30

     **SECTION 13 - ALTERNATIVES TO THE PLAN ..................................................... 31**

1.      Alternatives to the Plan:                                                                                      31

   a.      Liquidation Under Chapter 7: ................................................................................... 31

   b.      Another Plan: ........................................................................................................... 31

   c.      Non-Bankruptcy Workout: ....................................................................................... 31

     **SECTION 14 - DEFINITIONS .................................................................................. 31**

  Definitions ...................................................................................................................... 31

## SECTION 1- INTRODUCTION

1.  **Preliminary Statement**:

    This *Plan of Reorganization* and accompanying *Disclosure Statement* (the "*Plan*" and/or thee "*Disclosure Statement*") are being furnished to the holders of Claims and Interests of H&J Alamo Auto Glass, Inc. ("AAG" and/or the "Debtor") in this Chapter 11 Case. This *Disclosure Statement* has been prepared in connection with the solicitation of *Ballots* for the acceptance of the *Plan* under Chapter 11 of Title 11 of the United States Bankruptcy Code (the "Code").

2.  **Approval of the *Disclosure Statement* by the Court**:

    AAG submits that this *Disclosure Statement* contains "adequate information" as required by Section 1125(f)(3)(A) of the Code.

3.  **Holders of Claims**:

    Holders of Claims and Interests should read the *Disclosure Statement* and accompanying *Plan* in their entirety before voting on the *Plan*. No solicitation of *Votes* with respect to the *Plan* may be made except pursuant to this *Disclosure Statement*. No statements or information concerning the Debtor in this Chapter 11 Case (particularly as to its financial condition or with respect to distributions to be made under the *Plan*), or any of the assets and liabilities of the Debtor that is given for the purpose of soliciting acceptances or rejection of the *Plan* is authorized other than as set for in this *Disclosure Statement*.

4.  **Vote**:

    After reviewing the *Disclosure Statement* and all *Exhibits* attached to it, please indicate your acceptance or rejection of the *Plan* by voting in favor of or against it on the enclosed *Ballot*. Pursuant to Rule 3018 of the Federal Rules of Bankruptcy Procedure, and except as otherwise provided by order of the Court, all *Ballots* are to be sent directly to counsel for Debtor and are not to be filed with the Clerk of the Court.

    **RETURN THE BALLOT, IN DUPLICATE IN TIME TO BE RECEIVED NO LATER THAN OCTOBER 24, 2016 AT 5:00 P.M. MOUNTAIN TIME, THE VOTING DEADLINE, TO**:

    Carlos A. Miranda III, Esq.
    Gabe Perez, Esq.
    MIRANDA & MALDONADO, P.C.
    5915 Silver Springs, Bldg. 7
    El Paso, Texas  79912
    (915) 587-5000 (Telephone)
    (915) 587-5001 (Facsimile)
    **cmiranda@mirandafirm.com**

**gperez@mirandfirm.com**

5. **Late Ballots:**

Any *Ballot* received after the *Voting Deadline* may not be counted (unless otherwise ordered by the Court). *Ballots* that are received after the *Voting Deadline* may not be used in connection with the Debtor's request for *Confirmation* of the *Plan* or any modification thereof, except to the extent allowed by the Court.

6. **Contents of the *Disclosure Statement* and *Plan*:**

The *Disclosure Statement* and *Plan* have been prepared by the Debtor who is the *Plan's* proponent. The factual statements, projections, financial information, and other information contained in these instruments have been taken from documents prepared by the Debtor, its Accountants from information on file with the Court, including the *Schedules*, *Statements of Financial Affairs*, and the *Monthly Operating Reports*. Any information provided in the *Disclosure Statement* and *Plan* should not be relied upon by any creditor to the exclusion of independent verification by each creditor. Unless and until the *Plan* is confirmed, (a) nothing contained in the *Disclosure Statement* or *Plan* is intended to have any preclusive effect against the Debtor (whether by waiver, admission, estoppel or otherwise) in any cause or proceeding which may exist or occur in the future, and (b) the *Disclosure Statement* and *Plan* are not intended to be construed or deemed to constitute an acceptance of fact or an admission by the Debtor with regard to any of the statements made herein, and all rights and remedies of the Debtor are expressly reserved in their regard. The *Disclosure Statement* and *Plan* contain statements which constitute the Debtor's view of certain facts.

7. **Facts Are as of the *Petition Date or Disclosure Statement Date*:**

The statements contained in the *Disclosure Statement* and *Plan* are made as of the *Petition Date* or *Disclosure Statement* date unless another time is specified herein, and neither delivery of the instruments nor any exercise of rights granted in connection with them shall, under any circumstances, create an implication that there has been no change in the information herein since then.

8. **Forward-Looking Statements:**

Certain information contained in the *Disclosure Statement* is by its nature forward-looking, contains estimates and assumptions which may prove to be inaccurate, and contains projections which may prove to be wrong, or which may be materially different from actual future results. Each Creditor should independently verify and consult counsel and/or an accountant as to the effect the Confirmation of the *Plan* will have on their particular claim.

9. **Hearings on *Objections to Disclosure Statement* and Confirmation of the *Plan*:**

The *Order Approving Disclosure Statement* originally fixed the 15th day of September, 2016 at 10:00 o'clock a.m. Mountain Time, as the date, time, and place for a hearing on *Confirmation* of the *Plan* and final approval of the *Disclosure Statement*. The Order Resetting Plan Confirmation Hearing (Doc. #68) modified such date and established November 14, 2016 at 10:00 o'clock a.m. in the Courtroom of the Honorable H. Christopher Mott, United States Bankruptcy Judge, located at United States Bankruptcy Court for the Western District of Texas, El Paso Division, 511 E. San Antonio, Ave., 4th Floor, El Paso, Texas 79901, as the date, time, and place as the new hearing on *Confirmation* of the *Plan* and final approval of the *Disclosure Statement*. The *Order Approving Disclosure Statement* fixed the 22nd day of August, 2016 as the date by which all *Objections* to *Confirmation* of the *Plan* and Final Approval of the *Disclosure Statement* must be filed with the Court and received by the Debtor's Counsel. The Order Resetting Plan Confirmation Hearing (Doc. #68) extended such deadline to October 24, 2016. The Debtor may request *Confirmation* of the *Plan* at the *Confirmation Hearing* either by way consent of the Creditors and Interest Holders pursuant to Section 1129(a) of the Code or by "*Cramdown*" pursuant to Section 1129(b) of the Code.

## SECTION 2 – CHAPTER 11

1.  **The Purpose of Chapter 11: Business Reorganization and Formulation of a *Plan*:**

    The purposes of Chapter 11 of the Code are generally described in the following sections of this *Disclosure Statement*.

2.  **Chapter 11:**

    Chapter 11 is the principal business reorganization chapter of the Code. The commencement of a Chapter 11 case creates an "Estate" compromised of all the legal and equitable interests of a Debtor. Sections 1101, 1107 and 1108 of the Code provide that a Debtor may remain in possession of its property and continue to operate its business as a "Debtor-in-Possession" ("DIP"). This Chapter 11 Case was commenced with the filing of a *Voluntary Petition* by AAG on December 4, 2015 (the "*Petition Date*"). Since the *Petition Date*, AAG has continued to carry on its business affairs under the supervision of the United States Trustee ("UST"). Upon the filing of the *Voluntary Petition* under the Code and until such time as AAG's case is closed, dismissed, or a discharge is granted or denied, or a *Plan* is confirmed, AAG and its assets remain protected by the automatic stay. The automatic stay allows the Debtor an opportunity to continue its business and to reorganize or achieve rehabilitation by proposing, obtaining confirmation of, and implementing a *Plan* under which the claims of creditors are paid in whole or in part, and the Claims of Interest Holders are treated as required by the Code.

3.  **Plan of Reorganization:**

    Formulating a *Plan* is the principal purpose of a Chapter 11 case. The *Plan* is the vehicle for satisfying the holders of Claims against the Debtor. Under the Code, when soliciting acceptance or rejection of a *Plan*, the Debtor must transmit to the holders of claims or interests a *Disclosure Statement* approved by the Court as containing "adequate information".

4.      **Definition of Impairment**:

Under Section 1124 of the Code, a Class of Claims or Interests is "impaired" under a *Plan* unless the *Plan*, with respect to each Claim or Interest:

a.      Leaves unaltered the legal, equitable, and contractual rights of the Holder of such Claim or Interest; or

b.      Notwithstanding any contractual provision or applicable law that entitles the Holder of a Claim or Interest to receive accelerated payment of the Claim or Interest after the occurrence of a default:

c.      Cures any such default that occurred before or after the commencement of the Case under the Code, other than a default of a kind specified in section 365(b)(2) of the Code;

d.      Reinstates the maturity of such Claim or Interest as it existed before the default;

e.      Compensates the holder of such Claim or Interest for damages incurred as a result of reasonable reliance on such contractual provision or applicable law; and

f.      Does not otherwise alter the legal, equitable, or contractual rights to which such Claim or Interest entitles the Holder of such Claim or Interest.

5.      **Confirmation Hearing**:

At the Confirmation Hearing, the Court shall determine whether the requirements of Section 1129 of the Code have been satisfied, in which event the Court shall enter an *Order Confirming the Plan*. To confirm the *Plan*, the Court must find that:

a.      The *Plan* complies with the applicable provisions of the Code.

b.      The Debtor has complied with the applicable provisions of the Code.

c.      The *Plan* has been proposed in good faith and not by any means forbidden by law.

d.      Any payment made or promised by the Debtor or by a person issuing securities or acquiring property under the *Plan*, for services or for costs and expenses in, or in connection with these Case or in connection with the *Plan* and incident to this Case, has been disclosed to the Court, and any such payment made before the *Confirmation* of the *Plan* is reasonable, or if such payment is to be fixed after *Confirmation* of the *Plan*, such payment is subject to the approval of the Court as reasonable.

e.      The Debtor has disclosed the identity and affiliations of any individual proposed to serve, after *Confirmation* of the *Plan*, as a director, officer, or voting agent of the Debtor, an affiliate of the Debtor participating in a Plan with the Debtor, or a successor to the Debtor under the *Plan*, and the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and with public policy, and the Debtor has disclosed the identity of any insider that will be

employed or retained by the *Reorganized Debtor*, and the nature of any compensation for such insider.

f.    Any governmental regulatory commission with jurisdiction, after *Confirmation* of the *Plan*, over the rates of the Debtor has approved any rate change provided for in this, or such rate change is expressly conditioned on such approval.

g.    With respect to each Impaired Class of Claims or Interests, either each Holder of a Claim or Interest of such Class has accepted the *Plan*, or will receive or retain under the *Plan* on account of such Claim or Interest property of a value, as of the *Effective Date* of the *Plan*, that is not less than the amount that such holder would so receive or retain if the Debtor is liquidated on such date under Chapter 7 of the Code.

h.    Each Class of Claims or Interests has either accepted the *Plan* or is not impaired under the *Plan*.

i.    Except to the extent that the Holder of a particular Claim has agreed to a different treatment of such Claim, the Debtor must demonstrate at the *Confirmation* hearing that the *Plan* provides that *Administrative Expenses* and *Priority Claims* (other than tax claims) will be paid in full on the *Effective Date*, unless otherwise agreed to, and that *Priority Tax Claims* will receive on account of such claims deferred cash payments, over a period not exceeding five years after the date of the *Order for Relief*, unless otherwise agreed to, of a value, as of the *Effective Date*, equal to the allowed amount of such Claim.

j.    At least one Class of Claims that is Impaired under the *Plan* has accepted the *Plan*, determined without including any acceptance of the Plan by any Insider holding a Claim of such Class.

k.    Confirmation of the *Plan* is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any Successor to the Debtor under the *Plan*, unless such liquidation or reorganization is proposed in the *Plan*.

l.    All fees payable under 28 U.S.C. §1930, as determined by the Court at the Hearing on *Confirmation* of the *Plan* provides for the payment of all such fees on the *Effective Date* of the *Plan*.

m.    The *Plan* provides for the continuation after its *Effective Date* of payment of all retiree benefits, as that term is defined in Section 1114 of this Title, at the level established pursuant to subsection (e)(1)(B) or (g) of §1114 of the Code, at any time prior to Confirmation of the *Plan* for the duration of the period the Debtor has obligated themselves to provide such benefits.

The *Disclosure Statement* and *Plan* meet statutory requirements as further discussed in Section 8 below.

**6.    <u>Who May Object to Confirmation of the *Plan*</u>:**

Any Creditor or party in interest may object to the *Confirmation* of the *Plan*, but as explained below, not everyone is entitled to vote to accept or reject the *Plan*.

7.    **Who May Vote to Accept/Reject the *Plan*:**

A Creditor or Interest Holder has a right to vote for or against the *Plan* if that Creditor or Interest holder has a Claim which is both (1) allowed or allowed for voting purposes and (2) classified in an impaired Class.

8.    **What is an Allowed Claim/Interest:**

A Creditor must first have an Allowed Claim or Interest to have the right to vote. Generally, any *Proof of Claim* or *Interest* will be allowed, unless a party in interest files an objection to the Claim or Interest with the Bankruptcy Court. When an objection to a Claim is filed, the Creditor or Interest Holder holding the Claim cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the Claim or Interest for voting purposes.

9.    **Bar Date:**

A Creditor or Interest Holder may have an *Allowed Claim* or *Interest* even if a *Proof of Claim* or *Interest* was not timely filed. A Claim is deemed allowed if (1) it is scheduled on the *Schedules of Assets and Liabilities* and such Claim is not scheduled as *"disputed"*, *"contingent"*, or *"unliquidated"*; and (2) no party-in-interest has objected to the claim. An *Interest* is deemed allowed if it is scheduled and no party-in-interest has objected to the *Interest*. In this case, the *Bar Date* was April 12, 2016.

10.    **What is an Impaired Claim/Interest:**

As noted above, the Holder of an Allowed Claim or Interest only has the right to vote if it is in a Class that is impaired under the *Plan*. A Class is impaired if the *Plan* alters the legal, equitable, or contractual rights of the members of that Class. For example, where a Creditor receives payment terms or interest rates different than those in the original prepetition agreement, that Creditor is "impaired". Which Classes of Claims or Interest are Impaired is set forth in Section 8 of the *Disclosure Statement*.

11.    **Who is Not Entitled to Vote:**

The following four types of Claims are not entitled to vote: (1) Claims that have been disallowed; (2) Claims in Unimpaired Classes; (3) Claims entitled to priority pursuant to Code Sections 507(a)(1), (a)(2), and (a)(8); and (4) Claims in Classes that do not receive or retain any value under the *Plan*. Claims in unimpaired Classes are not entitled to Vote because such Classes are deemed to have accepted the *Plan*. Claims entitled to Priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(8) are not entitled to vote because such Claims are not placed in Classes and they are required to receive specific treatment specified by the Code. Claims in the foregoing categories have been classified for convenience purposes only. Claims in Classes that do not receive or retain any value under the *Plan* do not vote because such Classes are deemed to have rejected the *Plan*. **EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY**

**STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.**

12. <u>**Who Can Vote in More Than One Class**</u>:

A Creditor whose Claim has been allowed in part as a Secured Claim and in part as an Unsecured Claim is entitled to accept or reject a *Plan* in both capacities by casting one *Ballot* for the Unsecured Claim and by casting one *Ballot* for the Secured Claim.

13. <u>**Votes Necessary to Confirm the *Plan***</u>:

In this case the Court cannot confirm the *Plan* unless (1) all impaired classes have voted to accept the *Plan*, or (2) at least one Impaired Class has accepted the *Plan* without counting the votes of any Insiders within that Class, (3) each case can be confirmed in its own, and (4) the *Plan* is eligible to be confirmed by "Cramdown" on non-accepting Classes, as discussed in **section p)** below.

14. <u>**Votes Necessary for a Class to Accept the *Plan***</u>:

A Class of Claims is considered to have accepted the *Plan* when more than one-half (½) in number and at least two-thirds (2/3) in dollar amount of the Claims which actually voted, vote in favor of the *Plan*. A Class of Interests is considered to have accepted the *Plan* when at least two-thirds (2/3) in amount of the Interest Holders of such Class which actually voted, voted to accept the *Plan*.

15. <u>**Treatment of Non-Accepting Classes**</u>:

Even if all Impaired Classes do not accept the proposed *Plan*, the Court may nonetheless confirm the *Plan* if the non-accepting Classes are treated in the manner required by the Code. The process by which non-accepting Classes are forced to be bound by the terms of the *Plan* is commonly referred to as "Cramdown". The Code allows the *Plan* to be "Crammed Down" on non-accepting Classes of Claims or Interests if it meets all consensual requirements except the voting requirements of Section 1129(a)(8) of the Code and if the *Plan* does not "discriminate unfairly" and is "fair and equitable" toward each Impaired Class that has not voted to accept the *Plan* as referred to in 11 U.S.C. §1129(b) of the Code and applicable case law.

16. <u>**Cramdown**</u>:

In the event that any Impaired Class of Claims does not accept the *Plan*, the Court may still confirm the *Plan* at the request of the Debtor if, as to each Impaired Class which has not accepted the *Plan*, it "does not discriminate unfairly" and is "fair and equitable." A plan does not discriminate unfairly within the meaning of the Code if no Class receives more than it is legally entitled to receive for its Claims or Interests. "Fair and equitable" has different meanings for Secured Claims, Unsecured Claims, and Interests.

17. <u>**With Respect to a Secured Claim, "Fair and Equitable" Means Either**</u>:

(I) the Impaired Secured Creditor retains its lien to the extent of its Allowed Claim and receives deferred cash payments at least equal to the allowed amount of its Claim with a

present value as of the *Effective Date* at least equal to the value of such Creditors' interest in the property securing its lien; or (ii) property subject to the lien of the impaired Secured Creditor is sold free and clear of that lien, with the lien attaching to the proceeds of the sale, and such lien proceeds must be treated in accordance with clauses (III) or (IV) hereof; or (iii) the Impaired Secured Creditor realizes the "indubitable equivalent" of its claim under the *Plan*.

18. **With respect to an Unsecured Claim "Fair and Equitable" Means Either:**

(I) each Impaired Unsecured Creditor receives or retains property of a value equal to the amount of its Allowed Claim; or (ii) the Holders of Claims that are junior to the Claims of the dissenting Class will not receive any property under the *Plan*. In the event one or more Classes of Impaired Claims rejects the *Plan*, the Bankruptcy Court will determine at the Confirmation Hearing whether the *Plan* is fair and equitable and does not discriminate unfairly against any rejecting Impaired Class of Claims. In the event one or more Classes of Impaired Claims reject the *Plan*, the Debtor request that the Court confirm the *Plan* through a Cramdown of dissenting Impaired Classes at the *Confirmation Hearing* without additional notice to Creditors.

19. **Effect of Confirmation:**

The confirmed *Plan* binds AAG, except as otherwise provided in the *Plan* or the *Order Confirming Plan*. The *Plan's* confirmation further vests all property of the Estate in the Debtor except as provided by Sections 1141(d)(2) and (d)(3), and except as otherwise provided in the *Plan* or in the *Order Confirming Plan*. Except as otherwise provided in the *Plan*, after confirmation, the property dealt with by the *Plan* is free and clear of all claims and interest of creditors, equity security holders.

## SECTION 3 - BASIS OF THE PLAN

1. **Basis Of the *Plan*:**

The *Plan* is based on the future income generated by AAG. Its income is the sole source of revenue for payment of allowed claims under the *Plan*. The *Plan* seeks to pay 100% of AAG's unsecured creditors holding allowed Claims.

AAG believes that the total amount projected to be paid to the *General Unsecured Creditor* Class will satisfy the best interest of creditors test as required by the Code. All other Classes of Claims will be paid as required by the Code, prepetition loan and security documents, or as further described in this *Disclosure Statement* and the *Plan*.

Moreover, during the pendency of the Chapter 11 Case, AAG's principals, Mr. John Munoz and his wife Irma Munoz have paid from their personal funds certain priority claims reducing the balances to be paid by AAG, as well as certain unsecured claims in full, eliminating these claims from payment under the *Plan*, and thereby enhancing its viability. See **Section 8** of the Disclosure Statement.

2. **Future Income and Expenses Under the *Plan*:**

**Disclosure Statement's Exhibit "C"** - *Monthly Projections*.

**Disclosure Statement's Exhibit "D"** - *Projections* for Five (5) Years.

The Debtor is aware that the expenses reflected on the projections attached to this *Plan* and *Disclosure Statement* are lower than those reflected on the Monthly Operating Reports filed of record on this matter. During the course of this Chapter 11 proceeding, the Debtor, while maintaining its auto glass services, expanded its operations in commercial and residential glass work and increased its workforce in that area by an additional 2 employees thus increasing its overhead, namely the total amount of salary and payroll taxes paid by the Debtor on a given month. Like in any industry, the employees' profitability curve takes time to develop as productivity is heavily reliant on the sustained, targeted efforts of employees and these efforts do not come to fruition until training is complete. Employees become more productive as they progress through learning their job and increase their comfort level with their responsibilities. Based on the hiring dates of these employees, the Debtor expects the efficiency, income and overall margin of profit to increase in the future.

Furthermore, with the expansion of the commercial and residential glass work areas while taking into account the rapid residential growth and development of El Paso County, the reorganizing Debtor expects the overhead expenses to decrease as there is a greater market for residential and commercial glass and the costs for residential and commercial glass is lower than that of auto glass. The expected future decrease of expenses, while still only a forecast, is reflected on the attached set of projections. Lastly, after accounting for the adequate protection made by the Debtor during the pendency of this Chapter 11 proceeding, the proposed plan payments to the Internal Revenue Service and Texas Workforce Commission are lower than the monthly payments reflected on the monthly operating report, thus providing for a greater amount of net profit on a given month.

3.  **Future Management of the Debtor and Compensation to Executive and Managerial Employees:**

John Munoz will continue to manage AAG and will receive a monthly salary of approximately $6,000.00 per month.

It is expected that monthly net income from AAG will be sufficient to fund the expected monthly outlays. **Exhibits C** & **D** of the Disclosure Statement reflect projected cash flow for the next five (5) years.

a.  **Operations in Chapter 11:**

Since the filing of the Chapter 11 Case, John Munoz has been managing and overseeing the daily operations of AAG.

b).  **Accounting Method Used and Source of Financial Information:**

The *Summary* of AAG's *Monthly Operating Reports* on file with the Court has been pre-
pared on a cash basis. AAG has utilized generally accepted accounting principles, con-
sistently applied, in presenting financial historical data, other than the *Summary* of
*Monthly Operating Reports*. Financial forecasts are based upon current data from results
of operations since the *Petition Date*. Forecasts were prepared by AAG.

## SECTION 4 – UNCLASSIFIED CLAIMS

Certain types of claims are automatically entitled to specific treatment under the Code. They are
not considered impaired, and holders of such claims do not vote on the *Plan*. They may,
however, object if, in their view, their treatment under the *Plan* does not comply with that
required by the Code.  As such, AAG has not placed the following Claims in any class:

1.   **Administrative Expenses**

Administrative expenses are costs or expenses of administering the Debtor's chapter 11
case which are allowed under §507(a)(2) of the Code. Administrative expenses also
include the value of any goods sold to the Debtor in the ordinary course of business and
received within 20 days before the date of the bankruptcy petition.  The Code requires all
administrative expenses be paid on the effective date of the *Plan*, unless a particular
claimant agrees to a different treatment.

The following *Table* lists the Debtor's estimated administrative expenses and their
proposed treatment under the *Plan*:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Miranda & Maldonado, P.C. Attorney's Fees Bankruptcy Counsel | $30,000.00 | To be paid in equal monthly installments of $2,000.00 beginning the first day of the first full month following the *Effective Date* after approval by the Bankruptcy Court. |

2.   **Priority Tax Claims**

Priority tax claims are unsecured income, employment, and other taxes described by
§ 507(a)(8) of the Code. Unless the holder of such a §507(a)(8) priority tax claim agrees
otherwise, it must receive the present value of such claim, in regular installments paid
over a period not exceeding five (5) years from the *Petition Date*. The Tax Claims shall
be treated as follows:

| Description (name and type of | Estimated Amount | Treatment |
|---|---|---|

| tax) | Owed | |
|------|------|---|
| Internal Revenue Service | $11,978.88 | Will be paid in 48 equal monthly installments of $249.56 with interest at the rate of 3% beginning the first day of the first full month following the *Effective Date* and a like payment thereafter until paid in full.<br><br>The Debtor must remain current on all post-petition tax debt owed to the IRS. There will be no automatic stay with regard to federal post-petition tax debt, and IRS shall be free to collect the same after such notice as is required under Title 26, United States Code.<br><br>In the event of the Debtor's default, the IRS is not subject to the provisions of the Bankruptcy Code so that the IRS can take whatever actions are necessary to collect said debt in the event of default; the federal tax liens survive the plan confirmation, a bankruptcy discharge, and dismissal of the case. The Liens continue to be enforceable against all of the Debtor's property under federal law.<br><br>A failure by the Debtor to make a payment to the Internal Revenue Service pursuant to the terms of the Plan shall be an event of default, and as to the Internal Revenue Service, there is an event of default if payment is not received by the 15th day of each month. If there is a default, the Internal Revenue Service must send written demand for payment, and said payment must be received by the Internal Revenue Service within 15 days of the date of the demand letter. The Debtor can receive up to three notices of default from the Internal Revenue Service; however, on the third notice of default from the Internal Revenue Service the third notice cannot be cured, and the Internal Revenue Service may accelerate its allowed claim(s), past and future, and declare the outstanding amount of such claim(s) to be immediately due and owing and pursue any and all available state and federal rights and remedies. These default provisions pertain to the entire claim(s) of the Internal Revenue Service, secured, unsecured priority and unsecured general.<br><br>The IRS is bound by the provisions of the confirmed plan and is barred under 11 USC 1141 from taking any collection actions against the debtor for prepetition claims |

| | | during the duration of the Plan (provided there is no default as to the IRS).  The period of limitations on collection remains suspended under 26 USC 6503 (h) for the tax periods being paid under the Plan and terminates on the earlier of (1) all required payments to the IRS have been made; or (2) 30 days after the date of the demand letter (described above) for which the debtor failed to cure the default. |

3.      **Chapter 11 Quarterly Fees:**

The Debtor will continue to timely pay a quarterly fee to the United States Trustee as required under 28 U.S.C. §1930(a)(6).  The fee will be payable on the last day of the calendar month following the calendar quarter for which the fee is owed.  Prior to entry of a final decree, the Debtor will pay any remaining quarterly fees owed for the case.

**SECTION 5 – CLASSIFICATION OF CLAIMS AND INTERESTS OF CREDITORS**

There are three types of classified claims under the Plan: Secured Claims; General Unsecured Claims; and Equity Interest Holders. These Claims have been classified in Four (4) Classes. The following lists the proposed treatment that each of the Four (4) Classes will receive under the *Plan*:

1.      **Secured Claims**

Allowed Secured Claims are claims secured by property of the bankruptcy estate to the extent allowed as secured claims under §506 of the Code. If the value of the collateral securing the creditor's claim is less than the amount of the creditor's allowed claim, the difference/deficiency will be classified as a General Unsecured Claim. Secured claims currently total **$209,232.53**.

The following *Table* identifies the *Plan's* proposed treatment of **Classes 1, 2, 3, and 4,** consisting of the secured claims against the Debtor:

| Class | Impairment | Proof of Claim Number | Treatments |
|---|---|---|---|
| Class 1 - Secured Claim of the Internal Revenue Service. | *Impaired* | 2 | The Secured Claim of the IRS in the amount of $97,006.27[1] will be amortized over 60 months with 3.0% interest for an monthly amount of $1,743.08, beginning the fifteenth (15th) day of the first full |

---

[1] The IRS held a secured claim as of the *Petition Date* in the amount of $108,728.53. Since the *Petition Date*, the Debtor has made adequate protection payments during the pendency of this proceeding in the amount of $11,722.26, thus the balance as of the filing of this *Amended Disclosure Statement* and *Plan of Reorganization* is $97,006.27. The Debtor reserves the right to object to the proof of claim if necessary.

month following the *Effective Date* with a like payment on the first day of each succeeding month.

In the event of the Debtor's default, the IRS is not subject to the provisions of the Bankruptcy Code so that the IRS can take whatever actions are necessary to collect said debt in the event of default; the federal tax liens survive the plan confirmation, a bankruptcy discharge, and dismissal of the case. The Liens continue to be enforceable against all of the Debtor's property under federal law.

The debt owed by the Debtors to the Internal Revenue Service (IRS) is a Non-Dischargeable debt, except as otherwise provided for in the Code, and that if the Debtors default, the IRS is not subject to the provisions of the Bankruptcy Code so that the IRS can take whatever actions are necessary to collect said debt in the event of default; the federal tax liens survive the plan confirmation, a bankruptcy discharge, and dismissal of the case. The Liens continue to be enforceable against all of the debtor's property under federal law.

A failure by the Debtors to make a payment to the Internal Revenue Service pursuant to the terms of the Plan and/or failure to remain current on filing and paying post-confirmation taxes, shall be an event of default, and as to the Internal Revenue Service, there is an event of default if payment is not received by the 15th day of each month. If there is a default, the Internal Revenue Service must send written demand for payment, and said payment must be received by the Internal Revenue Service within 15 days of the date of the demand letter. The Debtor can receive up to three (3) notices of default from the Internal Revenue Service; however, on the third notice of default

| | | | |
|---|---|---|---|
| | | | from the Internal Revenue Service the third notice cannot be cured, and the Internal Revenue Service may accelerate its allowed claim(s), past and future, and declare the outstanding amount of such claim(s) to be immediately due and owing and pursue any and all available state and federal rights and remedies. These default provisions pertain to the entire claim(s) of the Internal Revenue Service, secured, unsecured priority and unsecured general.<br><br>The IRS is bound by the provisions of the confirmed plan and is barred under 11 USC 1141 from taking any collection actions against the debtors for prepetition claims during the duration of the Plan (provided there is no default as to the IRS). The period of limitations on collection remains suspended under 26 U.S.C. 6503 (h) for the tax periods being paid under the Plan and terminates on the earlier of (1) all required payments to the IRS have been made; or (2) 30 days after the date of the demand letter (described above) for which the debtor failed to cure the default. |
| Class 2 – Secured Claim of the Texas Comptroller of Public Accounts | *Impaired* | 6 | Notwithstanding anything herein to the contrary, the Texas Comptroller of Public Account's (the "Comptroller") prepetition allowed claim in the approximate amount of $46,496.27, will be paid in full through forty-eight (48) equal monthly installments in the amount of ONE THOUSAND SEVENTY TWO AND 14/100 DOLLARS ($1,072.14), with the first payment being made on December 15, 2016, which is the fifteenth (15th) day of the first full month following the *Confirmation Date*, with forty seven (47) payments of equal amount to be made on each consecutive month thereafter until the tax debt is paid in full no later than sixty (60) months from the Petition Date. The *Plan's* interest at the rate of 5.25% *per annum* shall accrue on the entire balance |

until the tax debt is paid in full. AAG, as the Reorganized Debtor may prepay the prepetition tax debt at any time.

Should the Debtor fail to make any payments as required in the *Plan*, the Comptroller shall provide written notice of that default and send written notice by certified mail to Debtor and Debtor's counsel advising of that default, and providing the Debtor with a period often (10) days to cure the default. In the event that the default is not cured within ten (10) days, the Comptroller may, without further order of this Court, pursue all of its rights and remedies available to it under the Texas Tax Code to collect the full amount of all taxes, penalties and interest owed. The Reorganized Debtor shall be entitled to no more than three (3) *Notices of Default*. In the event of a fourth (4th) default, the Comptroller may pursue all rights and remedies available to it under the Texas Tax Code in state district court without order of the Bankruptcy Court. These default provisions pertain to the entire claim(s) of the Comptroller, secured, unsecured priority and unsecured general.

The Comptroller is bound by the provisions of the *Confirmed Plan* and is barred under 11 U.S.C. §1141 from taking any collection actions against AAG for prepetition claims during the duration of the *Plan* (provided there is no default as to the Comptroller). The period of limitations on collection remains suspended under 26 U.S.C. §6503(h) for the tax periods being paid under the *Plan* and terminates on the earlier of (1) all required payments to the Comptroller have been made; or (2) 30 days after the date of the demand for payment letter (as described above) for which AAG has failed to cure such default.

Any outstanding post-petition taxes owed

| | | | to the Comptroller by the Debtor shall be paid in full on the Effective Date. The Debtor must remain current on all post-petition tax debt owed to the Comptroller. There will be no automatic stay with regard to post-petition tax obligations, and the Comptroller shall be free to exercise all right and remedies available to it under state law in the event of default of post-petition tax obligations. |
|---|---|---|---|
| Class 3 – Secured Claim of the Texas Workforce Commission | *Impaired* | 1 & 8 | Notwithstanding anything herein to the contrary, the Texas Workforce Commission's ("TWC") prepetition allowed claim in the approximate amount of $5,483.18[2] will be paid in full in forty-eight (48) equal monthly installments in the amount of ONE HUNDRED SIXTEEN AND 25/100 DOLLARS ($116.25), with the first payment being made on December 15, 2016, which is the fifteenth (15th) day of the first full month following the *Confirmation Date*, with forty-seven (47) payments of equal amount to be made on each consecutive month thereafter until the tax debt is paid in full. The *Plan's* interest at the rate of 5.25% *per annum* shall accrue on the entire balance until the tax debt is paid in full no later than sixty (60) months from the Petition Date. The Debtor, as the Reorganized Debtor may prepay the prepetition tax debt at any time.

Any outstanding post-petition taxes owed to the TWC by the Debtor, currently $2,840.10 for the 1Q 2016, shall be paid in full on the Effective Date. The Debtor will remain current with all postpetition unemployment taxes as they become due. The Debtor will continue to file any and all future reports with the TWC as they become due in the ordinary course of business. There will be no automatic stay |

---

[2] This amount may change slightly after a full accounting is completed by the parties.

with regard to post-petition tax obligations, and the TWC is free to exercise all right and remedies available to it under state law in event of default of post-petition tax obligations.

Should the Reorganized Debtor fail to make any payments as required in the *Plan*, the TWC shall provide written notice of that default and send written notice by certified mail to Debtor and Debtor's counsel advising of that default, and providing the Reorganized Debtor with a period often (10) days to cure the default. In the event that the default is not cured within ten (10) days, the TWC may, without further order of this Court, pursue all of its rights and remedies available to it under the Texas Tax Code to collect the full amount of all taxes, penalties and interest owed.

The Reorganized Debtor shall be entitled to no more than three (3) *Notices of Default*. In the event of a fourth (4th) default, the TWC may pursue all rights and remedies available to it under the Texas Tax Code in state district court without order of the Bankruptcy Court. These default provisions pertain to the entire claim(s) of the TWC, secured, unsecured priority and unsecured general

The TWC is bound by the provisions of the *Confirmed Plan* and is barred under 11 U.S.C. §1141 from taking any collection actions against the Reorganized Debtor for prepetition claims during the duration of the *Plan* (provided there is no default as to the TWC). The period of limitations on collection remains suspended under 26 U.S.C. §6503(h) for the tax periods being paid under the *Plan* and terminates on the earlier of (1) all required payments to the TWC have been made; or (2) 30 days after the date of the demand for payment letter (as described above) for which The Debtor

| | | | |
|---|---|---|---|
| | | | has failed to cure such default. |
| Class 4 – Secured Claim of JP Morgan Chase | *Impaired* | | The Secured Claim of JP Morgan Chase in the amount of $29,614.25 will be amortized over 60 months with 4.25% interest for an monthly amount of $548.74, beginning the fifteenth (15th) day of the first full month following the *Effective Date* with a like payment on the first day of each succeeding month thereafter until paid in full.<br><br>Chase is a secured creditor of the Debtor by being the holder of a *Lien* dated October 15, 2014, and most recently renewed on April 24, 2015 and filed with the Texas Secretary of State's Office creating certain lien interest (the "*Chase Lien*"). The *Chase Lien* encompasses the Debtor's Inventory, Equipment and Accounts Receivable |

### 3. **General Unsecured Claims – Class 5:**

AAG's *General Unsecured Claims* are classified as Class 5 and are not secured by property of the Estate or are not entitled to priority under §507(a) of the Code. The following *Table* identifies the *Plan's* proposed treatment of the *General Unsecured Claims* against the Debtor:

| CLASS 5 – GENERAL UNSECURED CLAIMS OF THE DEBTOR | | |
|---|---|---|
| CLAIMANT | AMOUNT | TO BE OBJECTED |
| Internal Revenue Service – POC 2 | $2,287.50 | NO |
| CAN Capital Merchant Services, Inc. - POC 4 | $77,810.03 | NO[3] |
| Ernesto Pineda – POC 5 | $51,471.11 | NO |
| Synchrony Bank – POC 7 | $2,252.27 | NO |
| Citibusiness Card. – Scheduled | $5,980.78 | NO |
| Curved Glass Distributions – Scheduled | $1.00 | NO |

---

[3] Although AAG does not intend to file an Objection to CAN Capital's POC, it intends to file a *Motion to Value Collateral* and based on the expected value of AAG's assets, AAG expects CAN Capital's claim to be deemed unsecured.

| | | |
|---|---|---|
| Office Depot Business Card– Scheduled | $2,724.68 | NO |
| Sam's Club – Scheduled | $2,031.23 | NO |
| Farmer's National Deductible Group - Scheduled | $1,000.00 | NO |
| Samson Partners | $15,000.00 | NO |
| **TOTAL** | **$160,558.60** | |

**Class 5 – General Unsecured Creditors**. AAG will pay 100% percent of the unsecured creditors in Class 5 claims over six (6) years without interest. Payments will be made in the combined amount of $2,229.98 per month beginning on the 15th day of the first full month following the *Effective Date* with like payments to be on the 15th day of each succeeding month thereafter for a total of seventy-two (72) months. All payments will be shared *pro-rata* amongst the Class 5 creditors. This Class is Impaired.

6.  **Equity Interest Holders Class 6:**

A.  **Equity Interest Holders:** Class 6 consists of the Equity Holder in this case. The sole Equity Holder consists of AAG's *President* and *General Manager* Mr. John Munoz. Mr. Munoz's wife, Irma Munoz, does not own any stock in AAG directly though she serves as its Vice-President and is directly involved in its day-to-day operations. By virtue of Texas being a Community Property state in which they reside, she does claim a community property interest in Mr. Munoz' estate. Mr. Munoz shall retain his equity interest in the Debtor. The Equity Holder also holds a $40,000.00 unsecured claims against the Estate which will be subordinated in this proceeding.

B.  **New Value by Equity Interest Holders:** To the extent necessary, in satisfaction of the ***Absolute Priority Rule*** as set forth in 11 U.S.C. Section 1129(b)(2)(B) and (C), the Equity Interest Holders have provided new value to the Bankruptcy Estate by virtue of having personally paid a total of $50,000.00 for a direct benefit to the Estate. Payments made by the Equity Interest Holders since the *Petition Date* have been as follows:

| Date | Amount | Paid To | Source | Benefit to Estate |
|---|---|---|---|---|
| 02/24/2016 | $1,400.00 | Texas Comptroller of Public Accounts (Secured Creditor – Class 2) | John Munoz | Reduction of Comptroller's Secured Claim - **POC No. 1**.  This payment was in addition to the Debtor's Adequate Protection Payment. |
| 03/08/2016 | $10,000.00 | Texas Comptroller of Public Accounts | Irma Munoz | Reduction of Comptroller's |

| | | | | |
|---|---|---|---|---|
| | | (Secured Creditor – Class 2) | | Secured Claim **POC No. 1**. This payment was in addition to the Debtor's Adequate Protection Payment. |
| 03/08/2016 | $20,215.00 | AT&T General Unsecured Creditor (Class 5 – POC No. 3). | John Munoz Irma Munoz | Elimination of POC No. 3. |
| 03/08/2016 | $1,500.00 | National Glass General Unsecured Creditor (Class 5) | John Munoz Irma Munoz | Purchase of Glass Inventory with Personal Funds. |
| 03/09/2016 | $7,600.00 | Nano's Truck & Tools General Unsecured Creditor (Class 5). | John Munoz Irma Munoz | Purchase of Company Truck with Personal Funds. |
| 03/09/2016 | $3,000.00 | AGTL General Unsecured Creditor (Class 5). | John Munoz Irma Munoz | Purchase of Glass Inventory with Personal Funds. |
| | $6,285.00 | | John Munoz Irma Munoz | Contribution of Personal Funds for Working Capital |
| **Total:** | **$50,000.00** | | | |

7. **Class 7 - Claim of Javier Hernandez:**

Class 7 consists of the allowed claim of Javier Hernandez in the amount of $32,500.00. AAG will pay this claim over seven (7) years with 5% interest. Payments will be made in the monthly amount of $360.00, beginning on the 15th day of the first full month following the *Effective Date* with like payments to follow on the 15th day of each succeeding month thereafter for a total of Eighty four (84) months. The reorganized Debtor will make balloon payment in the amount of $9,968.50 on the fifteenth (15th) day of the eighty-fourth (84th) following the Plan's *Effective Date*.

The Debtor shall issue the payments to the following address:

> Javier Hernandez
> c/o Corey W. Haugland, Esq.
> James & Haugland, P.C.
> 609 Montana Avenue
> El Paso, Texas 79902

Should the Debtor fail to make any payments on this Claim as required in the *Plan*, Mr. Hernandez shall provide written notice of that default and send written notice by certified mail to Debtor and Debtor's counsel advising of that default, and providing the Debtor with a period often (10) days to cure the default. In the event that the default is not cured within ten (10) days, Mr. Hernandez may, without further order of this Court, pursue all of its rights and remedies available to it under state law in state district court without further order of the Bankruptcy Court. The Reorganized Debtor shall be entitled to no more than three (3) *Notices of Default*. In the event of a fourth (4th) default, Mr. Hernandez may pursue all rights and remedies available to it under state law in state district court without further order of the Bankruptcy Court. There will no penalty for prepayment of this Claim by the Reorganized Debtor.

## SECTION 6 – REQUIREMENT FOR CONFIRMATION OF PLAN

1.    **Confirmation Requirements and Procedures:**

**PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THE PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF IS COMPLEX.** The following discussion is intended solely for the purpose of alerting readers about basic *Confirmation* issues, which they may wish to consider, as well as certain deadlines for filing Claims. The Debtor CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic. Many requirements must be met before the Court can confirm a *Plan*. Some of the requirements include that the *Plan* must be proposed in "Good Faith", whether the *Plan* pays creditors at least as much as Creditors would receive in a Chapter 7 liquidation, and whether the *Plan* is feasible. These requirements are not the only requirements for *Confirmation*.

a.    The Debtor assert that the *Plan* meets the requirements of Section 1129(a)(7) of the Code which is referred to as the "Best Interest of Creditors Test" which provides as follows:

With respect to each Impaired Class of Claim or Interest (I) Each holder of a Claim or an Interest of such Class (a) has accepted the Plan; or, (b) will received or retain under the Plan on account of such Claims or Interest, Property of a value, as of the Effective date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated under Chapter 7 of the Code on such date; or (ii) if Section 1111(b)(2) of the Code applies to the Claims of such Class, each holder of a Claim of such Class will received or retain under the Plan on account of such Claim, Property of a value, as of Effective Date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the Property that secures such Claims." This *Disclosure Statement* contains: (I) A detailed analysis and valuation of the Properties of the Bankruptcy Estates; (ii) A detailed liquidation analysis of such Properties; and (iii) What

would be realized by the holders of Claims and Interests if these Cases were converted Chapter 7 of the Code and in the Properties liquidated.

b.      If confirmation is sought pursuant to Section 1129(b) of the Code, the Debtor asserts that the *Plan* does not "discriminate unfairly" with respect to each Class of Claims or Interest Impaired and each Class of Interest Impaired, pursuant to the requirements of Section 1129(b)(1) of the Code.

c.      If Confirmation is sought pursuant to Section 1129(b) of the Code, the Debtor asserts that the *Plan* is "Fair and Equitable" with respect to each Class of Claims or Interest Impaired and each Class of Interest Impaired, pursuant to the requirements of Section 1129(b)(1) of the Code.

### SECTION 7 - MECHANICS AND IMPLEMENTATION OF THE PLAN

**1.      Means For Execution of the *Plan*:**

AAG provides the following means for the execution of the *Plan* -

*      The *Plan* is based on the future earnings of AAG.

### SECTION 8 - FEASIBILITY OF THE PLAN

**1.      Feasibility - No Further Reorganization Proceedings:**

AAG believes that the Estate will generate sufficient future income to fund the obligations under the proposed in the *Plan* and that no further reorganization proceedings will be likely.

### SECTION 9 – GENERAL TERMS AND CONDITIONS

**1.      General Terms and Conditions:**

The following general terms and conditions apply to the *Plan*:

**a.      Future Tax Obligations:**

AAG will file all future tax returns as they become due in the ordinary course of business, as well as remain current with all future tax obligations.

**b.      Replacement Liens:**

To the extent necessary, the Debtor will provide any secured creditor replacement liens on the assets subject to each respective secured

creditor's prepetition liens. These replacement liens will have the same priority as the secured creditor's prepetition liens.

**c.**  <u>**Transfers of Property**</u>:

AAG shall not sell any property or otherwise pledge such property subject to a secured creditor's liens without first obtaining consent of the secured creditor.

**d.**  <u>**Default**</u>:

In the event of a default on any of the above conditions, the secured creditor shall notify AAG and its Counsel of the default. AAG shall have ten (10) days from the date of receipt of the notification in which to cure its default. If AAG exceeds the ten (10) day cure period for any default of the above provisions, or exercises such options on more than two (2) occasions, the secured creditor, upon filing of a certificate of default, may proceed with collection efforts without further notice of this Court.

**e.**  <u>**Revestment of Title**</u>:

On Confirmation AAG shall be vested with its property subject only to the terms of the *Plan* and the Liens of the Secured Creditors described herein. If the case is later converted to a case under Chapter 7 of the Bankruptcy Code, all property of the debtor will revest in the Chapter 7 estate and be subject to administration by a chapter 7 Trustee.

**f.**  <u>**Discharge**</u>:

Upon confirmation of Plan, the reorganized Debtor shall receive a discharge as provided for under 11 U.S.C §1141 (d)(1).

**g.**  <u>**Preservation of Bankruptcy Causes of Action**</u>:

Pursuant to Section 1123(b)(3)(B) of the Code, the Debtor shall retain each and every claim, demand or cause of action which the Debtor or the Debtor-in-Possession had or had power to assert immediately prior to *Confirmation* of the *Plan*. Included, without limitation, are actions for the avoidance and recovery, pursuant to Section 550 of the Code, of transfers avoidable by reason of Sections 544, 545, 547, 549 or 553(b) of the Code. The Debtor may commence or continue in any appropriate Court or tribunal any suit or other proceeding for the enforcement of the same. Any and all Claims which the Debtor or the Estate of the Debtor may have or which may arise under any of the provisions of the Code or which may be enforceable under any of the provisions of the Code or any other law or statute, including Claims of the Estates, shall be preserved and the Court

shall retain jurisdiction to dispose of such causes of action, including common or statutory law causes of action unrelated to bankruptcy, pursuant to Section 1123(b)(3)(B) of the Code. All causes of action shall belong to the Debtor as part of the Property of the Debtor. To the extent any cause of action shall be non-transferable to the Debtor, they shall prosecute such causes of action for the benefit of the Estate. Any recovery of such non-transferable causes of action shall be distributed as the Court finds is fair and equitable. **The foregoing provisions of this Section notwithstanding, such provisions do not permit, allow, authorize, or empower The Debtor or any creditor or third-party to modify, either directly or indirectly, the terms of the *Plan* or the treatment accorded to Creditors under the *Plan*.**

h.      <u>**No Additional Charges**</u>**:**

Except as expressly stated in the *Plan*, or as allowed by Court Order, or underlying loan document, no interest, penalty, late charge or additional charges (such as attorney's fees) shall be allowed on any Claim subsequent to the *Filing Date*.

i.      <u>***De Minimus* Distributions**</u>**:**

Notwithstanding anything to the contrary herein, no distributions of cash shall be made hereunder in an amount less than Ten Dollars ($10). All cash not distributed pursuant to this provision shall vest in the Debtor, free of any Claim.

j.      <u>**Closing the Case**</u>**:**

When the Case has been fully administered, that is, when all things requiring action by the Court have been done, pursuant to Section 350 of the Code, and the *Plan* has been "Substantially Consummated" pursuant to Section 1101(2) of the Code, this Case shall be closed. To close the Case, the Debtor will file an *Application* to close the Case showing that it has been fully administered and that the *Plan* has been substantially consummated. The Court shall conduct a hearing upon the *Application*, after notice to all Creditors and other parties in interest, after which a *Final Decree* or *Order Closing Case* may be entered. The Debtor will seek to close the Case within One Hundred Twenty (120) days from the date of the *Order Confirming Plan*.

k.      <u>**Non-Waiver**</u>**:**

Nothing in the *Plan* and *Disclosure Statement* shall be deemed to waive, limit or restrict in any way the discharge granted upon Confirmation of the *Plan* in Section 1141 of the Code.

**l.**    **Law Governing Construction**:

The *Plan* shall be governed by, and construed and enforced, including defaults under the *Plan*, in accordance with, the laws of the State of Texas and where applicable the laws of the United States.

## SECTION 10 - DEFAULT BY THE DEBTOR OF ANY UNSECURED CLAIM

**1.**    **Default In Payment of Claims of Unsecured Creditors by AAG**:

The following terms and conditions shall apply to any default in any payment to any holder of an Allowed Unsecured Claim:

a.    **Conditions of Default and Remedies**:

A failure by AAG to make payment pursuant to the terms of the above Classes shall be an event of default. AAG shall have fifteen (15) days from receipt of notice from a Claimant in which such default has occurred to cure the default. If the default is not cured within the fifteen (15) day period, the Claimant may (a) accelerate the Allowed Claims in such class to be immediately due and owing and/or (b) pursue any and all available state and federal rights and remedies. The Debtor is permitted to cure a default in any Class three (3) times.

b.    **Defenses**:

In any litigation brought by an Unsecured Creditor, the Allowed Claim of the Unsecured Creditor is conclusively presumed to be correct with credit for payments received to date.

## SECTION 11 - TERMS AND CONDITIONS APPLICABLE TO SECURED CREDITORS

**1.**    **Terms and Conditions Relating to Secured Creditors**:

Classes 1 through 4 consist of the Secured Claims of all Secured Creditors, including those Creditors whose collateral has been abandoned to them, or for which an order for relief from the provisions of Sections 362 of the Code has been granted as finally allowed and ordered paid by the Court, and to the extent that such Claims are not greater than the value of AAG's assets which the Court finds are valid security for such Claims. The following terms and conditions apply to all Creditors holding Liens against Property of the Estate.

**2.**    **Preserved Liens**:

Except as otherwise provided above, including but not limited to provisions requiring releases of lien necessary to adjust boundary lines and for public dedications, provisions imposing burdens and obligations by Secured Creditors for cross-easements and equitable servitudes, and provisions requiring releases in relation to *ad valorem* tax liens, the Liens of the Secured Creditors are preserved.

**3.**     **Release of Liens:**

Upon payment in full to the Secured Creditors with preserved liens, or payment of the secured portion of their Claims, or payment of the remaining equity, if any to the secured portion of their Claims even though the secured portion of their claim may remain unsatisfied, such Secured Creditors shall execute the documents necessary to release their Liens securing such property.

**4.**     **Determination Of Secured Status:**

The value of a Secured Creditor's collateral shall be determined by the value assigned to that collateral by AAG in its *Schedules* unless a different value is referred to elsewhere in the *Plan* and *Disclosure Statement*, in which event the referenced value shall apply. The *Order Confirming Plan* shall operate as an order determining the value of collateral pursuant to Section 506(b) of the Code. The unsecured portion of a Secured Creditor's Claim pursuant to Section 506(b), if any, shall be paid pursuant to Class 5 of the *Plan*. In the event that a Secured Creditor objects to such value the Court shall set a hearing to determine the Secured Status of that Secured Creditor's Claim. The Debtor and/or the Successor to the Debtor reserve the right to commence proceedings to determine a Creditor's secured status pursuant to Section 506(b) of the Code, for a period of one hundred eighty (180) days after the *Effective Date* if the any provision of this section is held unenforceable.

### SECTION 12 - SATISFACTION OF CLAIMS AND INTERESTS

**1.**     **Satisfaction of Claims and Interests:**

Various Classes of Claims and Interests are defined in the *Plan*. The *Plan* is intended to deal with all Claims against the Debtor of whatever character, whether or not contingent or liquidated, and whether or not allowed by the Court pursuant to Section 502(h) of the Code. However, only those Claims allowed pursuant to Section 502(a) of the Code will receive distributions under the *Plan*. All Creditors and other parties in interest who have or assert Claims in any Class shall, upon Confirmation of the *Plan*, be deemed to have acknowledged that their respective Claims are fully satisfied by the distribution provided herein, each of which Claims, whether known or unknown, scheduled or unscheduled, filed or unfiled, asserted or assertable, are declared and shall be, for all purposes, upon the entry of the *Order Confirming Plan*, satisfied in full, pursuant to Section 1141(a) of the Code. All Impaired Classes of Claims shall receive the distributions as set forth in

the Plan, on account of, and in complete satisfaction of, all such Allowed Claims (and any interest accrued thereon). Without limiting the foregoing and effective on the *Effective Date*, each Creditor (or its successor) shall be deemed to have assigned to the Debtor all such Claims and all such parties shall be deemed to have waived, relinquished and released any and all of their rights, Claims (other than as provided for in the *Plan* or in the *Order Confirming Plan*) against the Debtor.

## SECTION 13 - ALTERNATIVES TO THE PLAN

1. **Alternatives to the Plan:**

   a. **Liquidation Under Chapter 7:**

   AAG has set forth at **Section 6** the likely liquidation scenarios under Chapter 7 of the Bankruptcy Code. Under these scenarios, it is most probable the General Unsecured Non-Insider Claims would not receive any distribution on their Allowed Claims. A conversion to Chapter 7 would not be a viable option for repayment.

   b. **Another Plan:**

   AAG knows of no other *Plan* which is to be proposed to the Court. AAG believes that the present *Plan* represents its best efforts for repayment to their Creditors and believes the *Plan* is in the best interests of the Estate, and the Secured and Unsecured Creditor constituencies.

   c. **Non-Bankruptcy Workout:**

   It is unlikely that in the event the Chapter 11 proceeding was dismissed that any Creditor would allow the Debtor an opportunity to restructure its Secured and/or Priority Claims in the non-bankruptcy setting. Most likely, the IRS would garnish the accounts of AAG once again, depriving it of cash flow, and thus preventing it from operating.

## SECTION 14 - DEFINITIONS

**Definitions:** See Section 25 of the *Disclosure Statement.*

DATED: December 1, 2016.

**H&J Alamo Auto Glass, Inc.**

By: /s/ John Munoz
John Munoz, President

**Attorneys for Debtor H&J Alamo Auto Glass, Inc.**

/s/ Carlos Miranda, Esq.
Carlos A. Miranda III, Esq.
Gabe Perez, Esq.
MIRANDA & MALDONADO, P.C.
5915 Silver Springs, Bldg. 7
El Paso, Texas 79912
(915) 587-5000 (Telephone)
(915) 587-5001 (Facsimile)
**cmiranda@mirandafirm.com**
**gperez@mirandafirm.com**

## ALAMO AUTO GLASS
## 12 MONTH CASH FLOW PROJECTION - YEAR 1

| | July | August | September | October | November | December | Janaury | February | March | April | May | June | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash-Beginning of Month | $ 19,000 | $ 25,381 | $ 31,762 | $ 44,744 | $ 57,725 | $ 67,706 | $ 67,687 | $ 69,568 | $ 102,250 | $ 130,631 | $ 159,012 | $ 165,393 | |
| Income | 135,000 | 135,000 | 125,000 | 125,000 | 120,000 | 110,000 | 112,000 | 145,000 | 145,000 | 145,000 | 140,000 | 140,000 | 1,577,000 |
| Payments | | | | | | | | | | | | | |
| Rent or mortgage payment | 7971.59 | 7971.59 | 7971.59 | 7971.59 | 7971.59 | 7971.59 | 7971.59 | 7971.59 | 7971.59 | 7971.59 | 7971.59 | 7971.59 | 95,659 |
| Utilities | 2,212.20 | 2,212.20 | 2,212.20 | 2,212.20 | 2,212.20 | 2,212.20 | 2,212.20 | 2,212.20 | 2,212.20 | 2,212.20 | 2,212.20 | 2,212.20 | 26,546 |
| Phone lines (landline, cell, FAX, Internet) | 1,129.66 | 1,129.66 | 1,129.66 | 1,129.66 | 1,129.66 | 1,129.66 | 1,129.66 | 1,129.66 | 1,129.66 | 1,129.66 | 1,129.66 | 1,129.66 | 13,556 |
| Phone charges (tollfree, long dx, voice mail, | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 4,200 |
| Salaries | 40,000.00 | 40,000.00 | 36,000.00 | 36,000.00 | 34,000.00 | 34,000.00 | 34,000.00 | 36,000.00 | 40,000.00 | 40,000.00 | 40,000.00 | 40,000.00 | 450,000 |
| Payroll (taxes, payroll services, etc.) sales | 10,200.00 | 10,200.00 | 9,600.00 | 9,600.00 | 9,600.00 | 9,600.00 | 9,700.00 | 9,900.00 | 10,200.00 | 10,200.00 | 10,200.00 | 10,200.00 | 119,200 |
| Sales Tax (TX & NM) | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 38,400 |
| Personal Property Taxes | 233.33 | 233.33 | 233.33 | 233.33 | 233.33 | 233.33 | 233.33 | 233.33 | 233.33 | 233.33 | 233.33 | 233.33 | 2,800 |
| ADT Security System | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 6,000 |
| Office supplies | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 4,800 |
| Postage | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 1,440 |
| Shipping/courier services | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 2,400 |
| Licenses and permits | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 3,600 |
| Attorney fees | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 24,000 |
| Accounting and other professional fees | 1,605.03 | 1,605.03 | 1,605.03 | 1,605.03 | 1,605.03 | 1,605.03 | 1,605.03 | 1,605.03 | 1,605.03 | 1,605.03 | 1,605.03 | 1,605.03 | 19,260 |
| Membership dues and subscriptions | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 3,600 |
| Business insurance | 742.51 | 742.51 | 742.51 | 742.51 | 742.51 | 742.51 | 742.51 | 742.51 | 742.51 | 742.51 | 742.51 | 742.51 | 8,910 |
| Bank charges | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 2,700 |
| Credit card processing fees | 825.00 | 825.00 | 825.00 | 825.00 | 825.00 | 825.00 | 825.00 | 825.00 | 825.00 | 825.00 | 825.00 | 825.00 | 9,900 |
| TWC Post Petition | 421.90 | 421.90 | 421.90 | 421.90 | 421.90 | 421.90 | 421.90 | 421.90 | 421.90 | 421.90 | 421.90 | 421.90 | 5,063 |
| Marketing | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 9,000 |
| Vehicle expense | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 19200 |
| Fuel | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 30,000 |
| Glass | 42,000.00 | 42,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 47,000.00 | 42,000.00 | 413,000 |
| Tint | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 4,800 |
| Texas mutual | 998.00 | 998.00 | 998.00 | 998.00 | 998.00 | 998.00 | 998.00 | 998.00 | 998.00 | 998.00 | 998.00 | 998.00 | 11,976 |
| Miscellaneous | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 6,000 |
| Auto fleet insurance | 590.13 | 590.13 | 590.13 | 590.13 | 590.13 | 590.13 | 590.13 | 590.13 | 590.13 | 590.13 | 590.13 | 590.13 | 7,082 |
| Plan Priority & Classes 1 & 5 - IRS | 2,030.77 | 2,030.77 | 2,030.77 | 2,030.77 | 2,030.77 | 2,030.77 | 2,030.77 | 2,030.77 | 2,030.77 | 2,030.77 | 2,030.77 | 2,030.77 | 24,369 |
| Plan Class 2 - TCPA | 1,013.43 | 1,013.43 | 1,013.43 | 1,013.43 | 1,013.43 | 1,013.43 | 1,013.43 | 1,013.43 | 1,013.43 | 1,013.43 | 1,013.43 | 1,013.43 | 12,161 |
| Plan Class 3 - TWC | 160.53 | 160.53 | 160.53 | 160.53 | 160.53 | 160.53 | 160.53 | 160.53 | 160.53 | 160.53 | 160.53 | 160.53 | 1,926 |
| Plan Class 4 - Chase | 549.74 | 549.74 | 549.74 | 549.74 | 549.74 | 549.74 | 549.74 | 549.74 | 549.74 | 549.74 | 549.74 | 549.74 | 6,597 |
| Plan Class 5 - General Unsecured | 2,230 | 2,230 | 2,230 | 2,230 | 2,230 | 2,230 | 2,230 | 2,230 | 2,230 | 2,230 | 2,230 | 2,230 | 26,760 |
| Plan Class 7 - Javier Hernandez | 360 | 360 | 360 | 360 | 360 | 360 | 360 | 360 | 360 | 360 | 360 | 360 | 4,320 |
| **Total Expenses** | $ 128,619 | $ 128,619 | $ 112,019 | $ 112,019 | $ 110,019 | $ 110,019 | $ 110,119 | $ 112,319 | $ 116,619 | $ 116,619 | $ 133,619 | $ 128,619 | $ 1,419,226 |
| Net profit | 6,381 | 6,381 | 12,981 | 12,981 | 9,981 | (19) | 1,881 | 32,681 | 28,381 | 28,381 | 6,381 | 11,381 | 157,774 |
| Cash-End of Month | $ 25,381 | $ 31,762 | $ 44,744 | $ 57,725 | $ 67,706 | $ 67,687 | $ 69,568 | $ 102,250 | $ 130,631 | $ 159,012 | $ 165,393 | $ 176,774 | 157,774 |

## ALAMO AUTO GLASS
### 12 MONTH CASH FLOW PROJECTION - YEAR 2

| | July | August | September | October | November | December | Janaury | February | March | April | May | June | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash-Beginning of Month | $ 176,774 | $ 183,656 | $ 190,537 | $ 204,018 | $ 217,499 | $ 227,980 | $ 228,462 | $ 230,843 | $ 264,024 | $ 292,905 | $ 321,786 | $ 328,668 | |
| Income | 135,000 | 135,000 | 125,000 | 125,000 | 120,000 | 110,000 | 112,000 | 145,000 | 145,000 | 145,000 | 140,000 | 140,000 | 1,577,000 |
| **Payments** | | | | | | | | | | | | | |
| Rent or mortgage payment | 7971.59 | 7971.59 | 7971.59 | 7971.59 | 7971.59 | 7971.59 | 7971.59 | 7971.59 | 7971.59 | 7971.59 | 7971.59 | 7971.59 | 95,659 |
| Utilities | 2,212.20 | 2,212.20 | 2,212.20 | 2,212.20 | 2,212.20 | 2,212.20 | 2,212.20 | 2,212.20 | 2,212.20 | 2,212.20 | 2,212.20 | 2,212.20 | 26,546 |
| Phone lines (landline, cell, FAX, Internet | 1,129.66 | 1,129.66 | 1,129.66 | 1,129.66 | 1,129.66 | 1,129.66 | 1,129.66 | 1,129.66 | 1,129.66 | 1,129.66 | 1,129.66 | 1,129.66 | 13,556 |
| Phone charges (tollfree, long dx, voice m | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 4,200 |
| Salaries | 40,000.00 | 40,000.00 | 36,000.00 | 36,000.00 | 34,000.00 | 34,000.00 | 34,000.00 | 36,000.00 | 40,000.00 | 40,000.00 | 40,000.00 | 40,000.00 | 450,000 |
| Payroll (taxes, payroll services, etc.) sales | 10,200.00 | 10,200.00 | 9,600.00 | 9,600.00 | 9,600.00 | 9,600.00 | 9,700.00 | 9,900.00 | 10,200.00 | 10,200.00 | 10,200.00 | 10,200.00 | 119,200 |
| Sales Tax (TX & NM) | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 38,400 |
| Personal Property Taxes | 233.33 | 233.33 | 233.33 | 233.33 | 233.33 | 233.33 | 233.33 | 233.33 | 233.33 | 233.33 | 233.33 | 233.33 | 2,800 |
| ADT Security System | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 6,000 |
| Office supplies | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 4,800 |
| Postage | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 1,440 |
| Shipping/courier services | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 2,400 |
| Licenses and permits | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 3,600 |
| Attorney fees | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 24,000 |
| Accounting and other professional fees | 1,605.03 | 1,605.03 | 1,605.03 | 1,605.03 | 1,605.03 | 1,605.03 | 1,605.03 | 1,605.03 | 1,605.03 | 1,605.03 | 1,605.03 | 1,605.03 | 19,260 |
| Membership dues and subscriptions | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 3,600 |
| Business insurance | 742.51 | 742.51 | 742.51 | 742.51 | 742.51 | 742.51 | 742.51 | 742.51 | 742.51 | 742.51 | 742.51 | 742.51 | 8,910 |
| Bank charges | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 2,700 |
| Credit card processing fees | 825.00 | 825.00 | 825.00 | 825.00 | 825.00 | 825.00 | 825.00 | 825.00 | 825.00 | 825.00 | 825.00 | 825.00 | 9,900 |
| TWC Post Petition | 421.90 | 421.90 | 421.90 | 421.90 | 421.90 | 421.90 | 421.90 | 421.90 | 421.90 | 421.90 | 421.90 | 421.90 | 5,063 |
| Marketing | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 9,000 |
| Vehicle expense | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 19,200 |
| Fuel | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 24,000 |
| Glass | 42,000.00 | 42,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 47,000.00 | 42,000.00 | 413,000 |
| Tint | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 4,800 |
| Texas mutual | 998.00 | 998.00 | 998.00 | 998.00 | 998.00 | 998.00 | 998.00 | 998.00 | 998.00 | 998.00 | 998.00 | 998.00 | 11,976 |
| Miscellaneous | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 6,000 |
| Auto fleet insurance | 590.13 | 590.13 | 590.13 | 590.13 | 590.13 | 590.13 | 590.13 | 590.13 | 590.13 | 590.13 | 590.13 | 590.13 | 7081.56 |
| Plan Priority & Classes 1 & 5 - IRS | 2,030.77 | 2,030.77 | 2,030.77 | 2,030.77 | 2,030.77 | 2,030.77 | 2,030.77 | 2,030.77 | 2,030.77 | 2,030.77 | 2,030.77 | 2,030.77 | 24,369 |
| Plan Class 2 - TCPA | 1,013.43 | 1,013.43 | 1,013.43 | 1,013.43 | 1,013.43 | 1,013.43 | 1,013.43 | 1,013.43 | 1,013.43 | 1,013.43 | 1,013.43 | 1,013.43 | 12,161 |
| Plan Class 3 - TWC | 160.53 | 160.53 | 160.53 | 160.53 | 160.53 | 160.53 | 160.53 | 160.53 | 160.53 | 160.53 | 160.53 | 160.53 | 1,926 |
| Plan Class 4 - Chase | 549.74 | 549.74 | 549.74 | 549.74 | 549.74 | 549.74 | 549.74 | 549.74 | 549.74 | 549.74 | 549.74 | 549.74 | 6,597 |
| Plan Class 5 - General Unsecured | 2,230 | 2,230 | 2,230 | 2,230 | 2,230 | 2,230 | 2,230 | 2,230 | 2,230 | 2,230 | 2,230 | 2,230 | 26,760 |
| Plan Class 7 - Javier Hernandez | 360 | 360 | 360 | 360 | 360 | 360 | 360 | 360 | 360 | 360 | 360 | 360 | 4,320 |
| **Total Expenses** | 128,119 | 128,119 | 111,519 | 111,519 | 109,519 | 109,519 | 109,619 | 111,819 | 116,119 | 116,119 | 133,119 | 128,119 | 1,413,226 |
| Net profit | 6,881 | 6,881 | 13,481 | 13,481 | 10,481 | 481 | 2,381 | 33,181 | 28,881 | 28,881 | 6,881 | 11,881 | 163,774 |
| Cash-End of Month | $ 183,656 | $ 190,537 | $ 204,018 | $ 217,499 | $ 227,980 | $ 228,462 | $ 230,843 | $ 264,024 | $ 292,905 | $ 321,786 | $ 328,668 | $ 340,549 | $ 163,774 |

**ALAMO AUTO GLASS**

**12 MONTH CASH FLOW PROJECTION - YEAR 3**

| | July | August | September | October | November | December | Janaury | February | March | April | May | June | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash-Beginning of Month | $ 340,549 | $ 349,430 | $ 358,311 | $ 373,792 | $ 389,274 | $ 401,755 | $ 404,236 | $ 408,617 | $ 443,798 | $ 474,680 | $ 505,561 | $ 514,442 | |
| Income | 135,000 | 135,000 | 125,000 | 125,000 | 120,000 | 110,000 | 112,000 | 145,000 | 145,000 | 145,000 | 140,000 | 140,000 | 1,577,000 |
| **Payments** | | | | | | | | | | | | | |
| Rent or mortgage payment | 7971.59 | 7971.59 | 7971.59 | 7971.59 | 7971.59 | 7971.59 | 7971.59 | 7971.59 | 7971.59 | 7971.59 | 7971.59 | 7971.59 | 95,659 |
| Utilities | 2,212.20 | 2,212.20 | 2,212.20 | 2,212.20 | 2,212.20 | 2,212.20 | 2,212.20 | 2,212.20 | 2,212.20 | 2,212.20 | 2,212.20 | 2,212.20 | 26,546 |
| Phone lines (landline, cell, FAX, Internet) | 1,129.66 | 1,129.66 | 1,129.66 | 1,129.66 | 1,129.66 | 1,129.66 | 1,129.66 | 1,129.66 | 1,129.66 | 1,129.66 | 1,129.66 | 1,129.66 | 13,556 |
| Phone charges (tollfree, long dx, voice mail, c | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 4,200 |
| Salaries | 40,000.00 | 40,000.00 | 36,000.00 | 36,000.00 | 34,000.00 | 34,000.00 | 34,000.00 | 36,000.00 | 40,000.00 | 40,000.00 | 40,000.00 | 40,000.00 | 450,000 |
| Payroll (taxes, payroll services, etc.) sales | 10,200.00 | 10,200.00 | 9,600.00 | 9,600.00 | 9,600.00 | 9,600.00 | 9,700.00 | 9,900.00 | 10,200.00 | 10,200.00 | 10,200.00 | 10,200.00 | 119,200 |
| Sales Tax (TX & NM) | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 38,400 |
| Personal Property Taxes | 233.33 | 233.33 | 233.33 | 233.33 | 233.33 | 233.33 | 233.33 | 233.33 | 233.33 | 233.33 | 233.33 | 233.33 | 2,800 |
| ADT Security System | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 6,000 |
| Office supplies | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 4,800 |
| Postage | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 1,440 |
| Shipping/courier services | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 2,400 |
| Licenses and permits | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 3,600 |
| Attorney fees | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | - |
| Accounting and other professional fees | 1,605.03 | 1,605.03 | 1,605.03 | 1,605.03 | 1,605.03 | 1,605.03 | 1,605.03 | 1,605.03 | 1,605.03 | 1,605.03 | 1,605.03 | 1,605.03 | 19,260 |
| Membership dues and subscriptions | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 3,600 |
| Business insurance | 742.51 | 742.51 | 742.51 | 742.51 | 742.51 | 742.51 | 742.51 | 742.51 | 742.51 | 742.51 | 742.51 | 742.51 | 8,910 |
| Bank charges | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 2,700 |
| Credit card processing fees | 825.00 | 825.00 | 825.00 | 825.00 | 825.00 | 825.00 | 825.00 | 825.00 | 825.00 | 825.00 | 825.00 | 825.00 | 9,900 |
| TWC Post Petition | 421.90 | 421.90 | 421.90 | 421.90 | 421.90 | 421.90 | 421.90 | 421.90 | 421.90 | 421.90 | 421.90 | 421.90 | 5,063 |
| Marketing | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 9,000 |
| Vehicle expense | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 19,200 |
| Fuel | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 24,000 |
| Glass | 42,000.00 | 42,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 47,000.00 | 42,000.00 | 413,000 |
| Tint | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 4,800 |
| Texas mutual | 998.00 | 998.00 | 998.00 | 998.00 | 998.00 | 998.00 | 998.00 | 998.00 | 998.00 | 998.00 | 998.00 | 998.00 | 11,976 |
| Miscellaneous | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 6,000 |
| Auto fleet insurance | 590.13 | 590.13 | 590.13 | 590.13 | 590.13 | 590.13 | 590.13 | 590.13 | 590.13 | 590.13 | 590.13 | 590.13 | 7081.56 |
| Plan Priority & Classes 1 & 5 - IRS | 2,030.77 | 2,030.77 | 2,030.77 | 2,030.77 | 2,030.77 | 2,030.77 | 2,030.77 | 2,030.77 | 2,030.77 | 2,030.77 | 2,030.77 | 2,030.77 | 24,369 |
| Plan Class 2 - TCPA | 1,013.43 | 1,013.43 | 1,013.43 | 1,013.43 | 1,013.43 | 1,013.43 | 1,013.43 | 1,013.43 | 1,013.43 | 1,013.43 | 1,013.43 | 1,013.43 | 12,161 |
| Plan Class 3 - TWC | 160.53 | 160.53 | 160.53 | 160.53 | 160.53 | 160.53 | 160.53 | 160.53 | 160.53 | 160.53 | 160.53 | 160.53 | 1,926 |
| Plan Class 4 - Chase | 549.74 | 549.74 | 549.74 | 549.74 | 549.74 | 549.74 | 549.74 | 549.74 | 549.74 | 549.74 | 549.74 | 549.74 | 6,597 |
| Plan Class 5 - General Unsecured | 2,230 | 2,230 | 2,230 | 2,230 | 2,230 | 2,230 | 2,230 | 2,230 | 2,230 | 2,230 | 2,230 | 2,230 | 26,760 |
| Plan Class 7 - Javier Hernandez | 360 | 360 | 360 | 360 | 360 | 360 | 360 | 360 | 360 | 360 | 360 | 360 | 4,320 |
| **Total Expenses** | 126,119 | 126,119 | 109,519 | 109,519 | 107,519 | 107,519 | 107,619 | 109,819 | 114,119 | 114,119 | 131,119 | 126,119 | 1,389,226 |
| Net profit | 8,881 | 8,881 | 15,481 | 15,481 | 12,481 | 2,481 | 4,381 | 35,181 | 30,881 | 30,881 | 8,881 | 13,881 | 187,774 |
| Cash-End of Month | $ 349,430 | $ 358,311 | $ 373,792 | $ 389,274 | $ 401,755 | $ 404,236 | $ 408,617 | $ 443,798 | $ 474,680 | $ 505,561 | $ 514,442 | $ 528,323 | 187,774 |

2

**ALAMO AUTO GLASS**

**12 MONTH CASH FLOW PROJECTION - YEAR 4**

| | July | August | September | October | November | December | Janaury | February | March | April | May | June | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash-Beginning of Month | $ 528,323 | $ 537,204 | $ 546,086 | $ 561,567 | $ 577,048 | $ 589,529 | $ 592,010 | $ 596,392 | $ 631,573 | $ 662,454 | $ 693,335 | $ 702,216 | |
| Income | 135,000 | 135,000 | 125,000 | 125,000 | 120,000 | 110,000 | 112,000 | 145,000 | 145,000 | 145,000 | 140,000 | 140,000 | 1,577,000 |
| **Payments** | | | | | | | | | | | | | |
| Rent or mortgage payment | 7971.59 | 7971.59 | 7971.59 | 7971.59 | 7971.59 | 7971.59 | 7971.59 | 7971.59 | 7971.59 | 7971.59 | 7971.59 | 7971.59 | 95,659 |
| Utilities | 2,212.20 | 2,212.20 | 2,212.20 | 2,212.20 | 2,212.20 | 2,212.20 | 2,212.20 | 2,212.20 | 2,212.20 | 2,212.20 | 2,212.20 | 2,212.20 | 26,546 |
| Phone lines (landline, cell, FAX, Internet) | 1,129.66 | 1,129.66 | 1,129.66 | 1,129.66 | 1,129.66 | 1,129.66 | 1,129.66 | 1,129.66 | 1,129.66 | 1,129.66 | 1,129.66 | 1,129.66 | 13,556 |
| Phone charges (tollfree, long dx, voice mai | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 4,200 |
| Salaries | 40,000.00 | 40,000.00 | 36,000.00 | 36,000.00 | 34,000.00 | 34,000.00 | 34,000.00 | 36,000.00 | 40,000.00 | 40,000.00 | 40,000.00 | 40,000.00 | 450,000 |
| Payroll (taxes, payroll services, etc.) sales | 10,200.00 | 10,200.00 | 9,600.00 | 9,600.00 | 9,600.00 | 9,600.00 | 9,700.00 | 9,900.00 | 10,200.00 | 10,200.00 | 10,200.00 | 10,200.00 | 119,200 |
| Sales Tax (TX & NM) | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 38,400 |
| Personal Property Taxes | 233.33 | 233.33 | 233.33 | 233.33 | 233.33 | 233.33 | 233.33 | 233.33 | 233.33 | 233.33 | 233.33 | 233.33 | 2,800 |
| ADT Security System | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 6,000 |
| Office supplies | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 4,800 |
| Postage | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 1,440 |
| Shipping/courier services | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 2,400 |
| Licenses and permits | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 3,600 |
| Attorney fees | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | - |
| Accounting and other professional fees | 1,605.03 | 1,605.03 | 1,605.03 | 1,605.03 | 1,605.03 | 1,605.03 | 1,605.03 | 1,605.03 | 1,605.03 | 1,605.03 | 1,605.03 | 1,605.03 | 19,260 |
| Membership dues and subscriptions | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 3,600 |
| Business insurance | 742.51 | 742.51 | 742.51 | 742.51 | 742.51 | 742.51 | 742.51 | 742.51 | 742.51 | 742.51 | 742.51 | 742.51 | 8,910 |
| Bank charges | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 2,700 |
| Credit card processing fees | 825.00 | 825.00 | 825.00 | 825.00 | 825.00 | 825.00 | 825.00 | 825.00 | 825.00 | 825.00 | 825.00 | 825.00 | 9,900 |
| TWC Post Petition | 421.90 | 421.90 | 421.90 | 421.90 | 421.90 | 421.90 | 421.90 | 421.90 | 421.90 | 421.90 | 421.90 | 421.90 | 5,063 |
| Marketing | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 9,000 |
| Vehicle expense | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 19200 |
| Fuel | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 24,000 |
| Glass | 42,000.00 | 42,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 47,000.00 | 42,000.00 | 413,000 |
| Tint | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 4,800 |
| Texas mutual | 998.00 | 998.00 | 998.00 | 998.00 | 998.00 | 998.00 | 998.00 | 998.00 | 998.00 | 998.00 | 998.00 | 998.00 | 11,976 |
| Miscellaneous | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 6,000 |
| Auto fleet insurance | 590.13 | 590.13 | 590.13 | 590.13 | 590.13 | 590.13 | 590.13 | 590.13 | 590.13 | 590.13 | 590.13 | 590.13 | 7,082 |
| Plan Priority & Classes 1 & 5 - IRS | 2,030.77 | 2,030.77 | 2,030.77 | 2,030.77 | 2,030.77 | 2,030.77 | 2,030.77 | 2,030.77 | 2,030.77 | 2,030.77 | 2,030.77 | 2,030.77 | 24,369 |
| Plan Class 2 - TCPA | 1,013.43 | 1,013.43 | 1,013.43 | 1,013.43 | 1,013.43 | 1,013.43 | 1,013.43 | 1,013.43 | 1,013.43 | 1,013.43 | 1,013.43 | 1,013.43 | 12,161 |
| Plan Class 3 - TWC | 160.53 | 160.53 | 160.53 | 160.53 | 160.53 | 160.53 | 160.53 | 160.53 | 160.53 | 160.53 | 160.53 | 160.53 | 1,926 |
| Plan Class 4 - Chase | 549.74 | 549.74 | 549.74 | 549.74 | 549.74 | 549.74 | 549.74 | 549.74 | 549.74 | 549.74 | 549.74 | 549.74 | 6,597 |
| Plan Class 5 - General Unsecured | 2,230 | 2,230 | 2,230 | 2,230 | 2,230 | 2,230 | 2,230 | 2,230 | 2,230 | 2,230 | 2,230 | 2,230 | 26,760 |
| Plan Class 7 - Javier Hernandez | 360 | 360 | 360 | 360 | 360 | 360 | 360 | 360 | 360 | 360 | 360 | 360 | 4,320 |
| **Total Expenses** | 126,119 | 126,119 | 109,519 | 109,519 | 107,519 | 107,519 | 107,619 | 109,819 | 114,119 | 114,119 | 131,119 | 126,119 | 1,389,226 |
| Net profit | 8,881 | 8,881 | 15,481 | 15,481 | 12,481 | 2,481 | 4,381 | 35,181 | 30,881 | 30,881 | 8,881 | 13,881 | 187,774 |
| Cash-End of Month | $ 537,204 | $ 546,086 | $ 561,567 | $ 577,048 | $ 589,529 | $ 592,010 | $ 596,392 | $ 631,573 | $ 662,454 | $ 693,335 | $ 702,216 | $ 716,098 | 187,774 |

# ALAMO AUTO GLASS
## 12 MONTH CASH FLOW PROJECTION - YEAR 5

| | July | August | September | October | November | December | Janaury | February | March | April | May | June | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash-Beginning of Month | $ 716,098 | $ 725,228 | $ 734,359 | $ 750,090 | $ 765,821 | $ 778,551 | $ 781,282 | $ 785,913 | $ 821,344 | $ 852,474 | $ 883,605 | $ 892,736 | |
| Income | 135,000 | 135,000 | 125,000 | 125,000 | 120,000 | 110,000 | 112,000 | 145,000 | 145,000 | 145,000 | 140,000 | 140,000 | 1,577,000 |
| **Payments** | | | | | | | | | | | | | |
| Rent or mortgage payment | 7971.59 | 7971.59 | 7971.59 | 7971.59 | 7971.59 | 7971.59 | 7971.59 | 7971.59 | 7971.59 | 7971.59 | 7971.59 | 7971.59 | 95,659 |
| Utilities | 2,212.20 | 2,212.20 | 2,212.20 | 2,212.20 | 2,212.20 | 2,212.20 | 2,212.20 | 2,212.20 | 2,212.20 | 2,212.20 | 2,212.20 | 2,212.20 | 26,546 |
| Phone lines (landline, cell, FAX, Internet) | 1,129.66 | 1,129.66 | 1,129.66 | 1,129.66 | 1,129.66 | 1,129.66 | 1,129.66 | 1,129.66 | 1,129.66 | 1,129.66 | 1,129.66 | 1,129.66 | 13,556 |
| Phone charges (tollfree, long dx, voice ma | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 4,200 |
| Salaries | 40,000.00 | 40,000.00 | 36,000.00 | 36,000.00 | 34,000.00 | 34,000.00 | 34,000.00 | 36,000.00 | 40,000.00 | 40,000.00 | 40,000.00 | 40,000.00 | 450,000 |
| Payroll (taxes, payroll services, etc.) sales | 10,200.00 | 10,200.00 | 9,600.00 | 9,600.00 | 9,600.00 | 9,600.00 | 9,700.00 | 9,900.00 | 10,200.00 | 10,200.00 | 10,200.00 | 10,200.00 | 119,200 |
| Sales Tax (TX & NM) | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 38,400 |
| Personal Property Taxes | 233.33 | 233.33 | 233.33 | 233.33 | 233.33 | 233.33 | 233.33 | 233.33 | 233.33 | 233.33 | 233.33 | 233.33 | 2,800 |
| ADT Security System | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 6,000 |
| Office supplies | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 4,800 |
| Postage | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 1,440 |
| Shipping/courier services | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 2,400 |
| Licenses and permits | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 3,600 |
| Attorney fees | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | - |
| Accounting and other professional fees | 1,605.03 | 1,605.03 | 1,605.03 | 1,605.03 | 1,605.03 | 1,605.03 | 1,605.03 | 1,605.03 | 1,605.03 | 1,605.03 | 1,605.03 | 1,605.03 | 19,260 |
| Membership dues and subscriptions | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 3,600 |
| Business insurance | 742.51 | 742.51 | 742.51 | 742.51 | 742.51 | 742.51 | 742.51 | 742.51 | 742.51 | 742.51 | 742.51 | 742.51 | 8,910 |
| Bank charges | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 2,700 |
| Credit card processing fees | 825.00 | 825.00 | 825.00 | 825.00 | 825.00 | 825.00 | 825.00 | 825.00 | 825.00 | 825.00 | 825.00 | 825.00 | 9,900 |
| TWC Post Petition | 421.90 | 421.90 | 421.90 | 421.90 | 421.90 | 421.90 | 421.90 | 421.90 | 421.90 | 421.90 | 421.90 | 421.90 | 5,063 |
| Marketing | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 9,000 |
| Vehicle expense | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 19200 |
| Fuel | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 24,000 |
| Glass | 42,000.00 | 42,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 47,000.00 | 42,000.00 | 413,000 |
| Tint | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 4,800 |
| Texas mutual | 998.00 | 998.00 | 998.00 | 998.00 | 998.00 | 998.00 | 998.00 | 998.00 | 998.00 | 998.00 | 998.00 | 998.00 | 11,976 |
| Miscellaneous | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 6,000 |
| Auto fleet insurance | 590.13 | 590.13 | 590.13 | 590.13 | 590.13 | 590.13 | 590.13 | 590.13 | 590.13 | 590.13 | 590.13 | 590.13 | 7,082 |
| Classes 1 & 5 - IRS | 1,781.21 | 1,781.21 | 1,781.21 | 1,781.21 | 1,781.21 | 1,781.21 | 1,781.21 | 1,781.21 | 1,781.21 | 1,781.21 | 1,781.21 | 1,781.21 | 21,375 |
| Plan Class 2 - TCPA | 1,013.43 | 1,013.43 | 1,013.43 | 1,013.43 | 1,013.43 | 1,013.43 | 1,013.43 | 1,013.43 | 1,013.43 | 1,013.43 | 1,013.43 | 1,013.43 | 12,161 |
| Plan Class 3 - TWC | 160.53 | 160.53 | 160.53 | 160.53 | 160.53 | 160.53 | 160.53 | 160.53 | 160.53 | 160.53 | 160.53 | 160.53 | 1,926 |
| Plan Class 4 - Chase | 549.74 | 549.74 | 549.74 | 549.74 | 549.74 | 549.74 | 549.74 | 549.74 | 549.74 | 549.74 | 549.74 | 549.74 | 6,597 |
| Plan Class 5 - General Unsecured | 2,230 | 2,230 | 2,230 | 2,230 | 2,230 | 2,230 | 2,230 | 2,230 | 2,230 | 2,230 | 2,230 | 2,230 | 26,760 |
| Plan Class 7 - Javier Hernandez | 360 | 360 | 360 | 360 | 360 | 360 | 360 | 360 | 360 | 360 | 360 | 360 | 4,320 |
| **Total Expenses** | 125,869 | 125,869 | 109,269 | 109,269 | 107,269 | 107,269 | 107,369 | 109,569 | 113,869 | 113,869 | 130,869 | 125,869 | 1,386,231 |
| Net profit | 9,131 | 9,131 | 15,731 | 15,731 | 12,731 | 2,731 | 4,631 | 35,431 | 31,131 | 31,131 | 9,131 | 14,131 | 1,451,131 |
| Cash-End of Month | $ 725,228 | $ 734,359 | $ 750,090 | $ 765,821 | $ 778,551 | $ 781,282 | $ 785,913 | $ 821,344 | $ 852,474 | $ 883,605 | $ 892,736 | $ 906,867 | $ 1,451,131 |